UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JEROME ANTOINE, | ) | |
| Petitioner, | ) | CIVIL ACTION NO: |
| | ) | 05-10246-RCL |
| v. | ) | |
| | ) | |
| MICHAEL CHERTOFF, Secretary of the | ) | |
| Department of Homeland Security, | ) | |
| Respondent. | ) | |

### RESPONDENT'S OPPOSITION TO THE PETITION FOR A WRIT OF HABEAS CORPUS

### Introduction

The Petitioner, a native and citizen of Haiti, seeks habeas review in this Court of an order of the Board of Immigration Appeals ("BIA") affirming without opinion the January 30, 2002, decision of an immigration judge ("IJ") finding the Petitioner removable and denying the Petitioner's request for asylum, withholding of removal, cancellation of removal and for relief under the Convention Against Torture ("CAT"). See Decision of the Immigration Judge ("IJ"), dated January 30, 2002, attached hereto as Exhibit 1; and the Decision of the BIA, dated September 25, 2003, attached hereto as Exhibit 2.

By way of the instant Petition, the Petitioner: (1) challenges the IJ's credibility findings, contending that the Petitioner had adequately explained his inability to recall details and has adequately explained the absence of documentary evidence, Petitioner's Memorandum in Support of the Petition ("Memo."), p. 2-4 ; (2) claims that the IJ's finding that the Petitioner required documentary evidence to support his claim imposed a burden of proof beyond that required by applicable regulations, id., p. 2-4; (3) claims that the IJ imposed a higher standard of proof than that required by law in reviewing Petitioner's claim for relief under the CAT, contending that the IJ should have reviewed the Petitioner's subjective circumstances, rather

than objective conditions, id., p. 4; (4) seeks relief pending the outcome of a petition to adjust

his status based upon his marriage to a U.S. citizen, id., p. 5; and (5) seeks to introduce "new

evidence" before this Court. Id., p. 5; Petitioner's Motion to Allow Further Evidence.

As explained more fully herein, the IJ's factual and credibility determinations are outside

the scope of habeas review and, in any event, are adequately supported by the evidence of

record. Moreover, the IJ applied the appropriate legal standards and the Petitioner should have

filed a motion to reopen based on new evidence with the BIA, rather than this court. Finally, the

Petitioner is statutorily ineligible to adjust his status. For the foregoing reasons, as more fully

explained herein, the Petition should be denied.

### FACTS

The Petitioner Jerome Antoine was charged and found removable as being an arriving

alien inadmissible to the United States. Exhibit 1, p. 1-2, and 3.[1] Petitioner conceded

removability, but petitioned for withholding of removal,[2] asylum, cancellation of removal, and

relief under the CAT.[3] Id., at 2.

---

[1] On September 29, 2000, the Petitioner was convicted in the Northern District of New York of assisting another alien to enter the United States illegally. See PACER Docket #00-00476-DRH.

[2] The grant of withholding of removal under the INA is mandatory if an alien proves that his "life or freedom would be threatened in [the] country because of his race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A) (2000); accord Shi v. BIA, 374 F.3d 64, 65 (2nd Cir. 2004). To obtain such relief, the alien must establish a "clear probability" — i.e., that it is "more likely than not" — that his life or freedom would be threatened on return to his country. INS v. Stevic, 467 U.S. 407, 429-30 (1987); 8 C.F.R. § 208.16(b).

[3] The CAT was implemented by the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, 112 Stat. 2681-761. Article 3 of the CAT provides that "[n]o State Party shall expel, return (refouler) or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture."

The Petitioner was determined to be ineligible for asylum and cancellation of removal

because of his aggravated felony conviction, a finding unchallenged before this Court.[4]  The IJ

found, however, that the Petitioner was potentially eligible for relief under the CAT and/or

withholding of removal.

The Petitioner testified over the course of several days that he had been subject to

multiple arrests and beatings at the hands of the Haitian government as a result of articles that he

had published that were critical of the Haitian government.  Exhibit 1, p. 6.[5]  After hearing, the IJ

concluded that the Petitioner had not met his burden of proof.  The IJ found the Petitioner's

testimony not credible, noting inconsistencies between the petitioner's asylum application and

his testimony, the Petitioner's inability to recall the dates of his alleged arrests (while

correspondingly being able to recall the details of alleged beatings with remarkable clarity),

Petitioner's inability to identify the government in power when the beatings allegedly took place,

---

To establish eligibility for withholding of removal under the CAT, an applicant bears the burden of proving "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal."  8 C.F.R. § 1208.16(c)(2); Canaveral Tobin v. Ashcroft, 385 F.3d 40, 45(1st Cir. 2004).  The CAT defines "torture" as "'any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining . . . information or a confession, punish[ment] . . . , or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'"  Id. (quoting 8 C.F.R. § 1208.18(a)(1)).  Because "'[t]orture is an extreme form of cruel and inhuman treatment,'" even cruel and inhuman behavior by officials may not warrant CAT protection.  Id. (quoting 8 C.F.R. § 1208.18(a)(2) (emphasis added)); Sevoian v. Ashcroft, 290 F.3d 166, 175 (3rd Cir. 2002).

[4]See, e.g., Saint Fort v. Ashcroft, 329 F.3d 191, 193 (1st Cir.  2003)("Because of his status as an aggravated felon, he was ineligible for asylum. . . ."); and 8 U.S.C. § 1229b(a) (rendering aggravated felons ineligible for cancellation of removal).

[5]Testimony was taken on January 22, 2001, February 14, 2001, April 9, 2001, April 30, 2001, October 29, 2001 and  January 30, 2002.

Petitioner's testimony was inconsistent, vague, unresponsive and lacking in detail, and that the Petitioner had failed to submit documentary evidence which was reasonably available.  Exhibit 1, p. 6-11.  As a consequence, the IJ found the Petitioner's testimony incredible and denied the Petitioner's requests for relief.  Exhibit1, p. 11.

The Petitioner appealed that decision to the BIA which affirmed the IJ's decision without opinion.  See Exhibit 2.[6]

The Petitioner, convicted of an aggravated felony, is ineligible for direct review of his order of removal in the court of appeals.  See 8 U.S.C. §1252(a)(1)(C).

**Argument**

### I.    Habeas Jurisdiction Does Not Encompass Challenges to the Factual Findings of the BIA

There is no doubt that habeas jurisdiction exists to review claims arising under the CAT. See, e.g., Saint Fort v. Ashcroft, 329 F.3d 191 (1st Cir.  2003).  Of particular significance to this case, however, is the *scope* of review available in habeas.  Habeas review is substantially more narrow than "judicial review,"[7] and "it is the scope of inquiry on habeas corpus that differentiates 'habeas review' from 'judicial review.'"  INS v. St. Cyr, 533 U.S. 289, 312 (2001) (quoting Heikkila v. Barber, 345 U.S. 229, 236 (1953)); see also, St. Cyr, 533 U.S. at 311 ("In the immigration context, "judicial review" and "habeas corpus" have historically distinct meanings.")

---

[6]In these circumstances, the IJ's decision becomes the final agency decision for purposes of review.  Albathani v. INS, 318 F.3d 365, 375-79 (1st Cir. 2003).

[7]The term "judicial review," in this context, refers to appeals of BIA decisions to the circuit court of appeals.  As previously noted, the Petitioner is ineligible for direct review.  See 8 U.S.C. § 1252(a)(1)(C).

While certainly direct "judicial review" contemplates review of factual determinations (albeit only for substantial evidence),[8] no such review is available in habeas. See Carranza v. INS, 277 F.3d 65, 72 n6 (1st Cir. 2002) ("Purely legal questions are suitable for habeas review because answering them does not necessitate second-guessing the agency's factual findings or the Attorney General's exercise of her discretion.") (citations omitted); Goncalves v. Reno, 134 F.3d 110, 113-114 (1st Cir. 1998) (contrasting habeas review with administrative review available under old Immigration and Nationality Act § 106 and noting "we are not being asked to review and reverse the manner in which discretion was exercised by examining the evidence in the record supporting or undermining the alien's claim to discretionary relief"); see also, Sol v. INS, 274 F.3d 648, 650 (2nd Cir. 2001) ("[t]his sort of fact- intensive review is vastly different from what the habeas statute plainly provides: review for statutory or constitutional errors"); Bowrin v. INS, 194 F.3d 483, 490 (4th Cir. 1999) ("Only questions of pure law will be considered on § 2241 habeas review. Review of factual or discretionary issues is prohibited").

Petitioner's contention that he has adequately explained the absence of documentary support and clear memory (he contends that his relatives were no longer in Haiti and that the past abuse of the Haitian government left him with memory problems) is a factual challenge outside the scope of habeas review. Stated another way, whether to believe that the Petitioner has memory difficulties, or, that the Petitioner is lying, is a credibility determination, a determination

---

[8]See, e.g., Ali v. Gonzales, 401 F.3d 11, 15 (1st Cir. 2005) ("We review decisions of the BIA under the substantial evidence standard. Under this standard, the BIA's decision will be upheld if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole. Under this standard, to reverse the BIA finding, we must find that the evidence not only supports that conclusion, but compels it.") (citations and quotations omitted).

this Court is in no position to make.[9]   Similarly, the question of whether documents were

available to the Petitioner is predicated upon a conclusion as to whether the Petitioner's

explanation is, itself, credible.  In essence, Petitioner simply contends that the evidence should

have been weighed differently.   This  "error," if any, is not an error of law within this Court's

habeas jurisdiction.

Thus, the Petitioner's claims challenging the IJ's credibility and factual determinations

are beyond the scope of this Court's review.

---

[9][T]he law must entrust some official with responsibility to hear an applicant's
asylum claim, and the IJ has the unique advantage among all officials involved in
the process of having heard directly from the applicant.  A fact-finder who
assesses testimony together with witness demeanor is in the best position to
discern, often at a glance, whether a question that may appear poorly worded on a
printed page was, in fact, confusing or well understood by those who heard it;
whether a witness who hesitated in a response was nevertheless attempting
truthfully to recount what he recalled of key events or struggling to remember the
lines of a carefully crafted "script"; and whether inconsistent responses are the
product of innocent error or intentional falsehood.  Reviewing courts have long
recognized. . . that a witness may convince all who hear him testify that he is
disingenuous and untruthful, and yet his testimony, when read, may convey a
most favorable impression.

Zhang v. INS, 386 F.3d 66, 73 (2nd Cir. 2004) (quotations omitted).

## II.    If Considered, the IJ's Findings Are Adequately Supported By the Evidence of Record

Even if this Court were to presume that it had some jurisdiction over the issue,[10] the IJ's

findings are adequately supported by the record.  While the Respondent does not concede that

such review is available in a habeas proceeding, it is certainly clear that the scope of this Court's

authority to review facts cannot exceed that which would have been exercised by the court of

appeals on direct review.  See St. Cyr, supra (noting that habeas review is more limited than

direct review) and Ali, 401 F.3d at 15 (on direct review, factual findings are reviewed under a

substantial evidence standard).  Assuming *arguendo* that this Court has some jurisdiction to

review factual findings, the IJ's findings with regard to the Petitioner's credibility are more than

adequately supported.

First, IJ specifically noted significant inconsistencies between the asylum application and

the Petitioner's testimony, specifically, the asylum application claimed only one period of

incarceration, whereas Petitioner testified to three or four, Exhibit 1, p. 8, and the asylum

application claimed only one return trip to Haiti, whereas Petitioner testified that he returned to

Haiti for six or seven months a year between 1993 and 1997.  Id. at 8-9.  The IJ also noted it

somewhat incredible that an individual who would purportedly be tortured upon return to Haiti

would repeatedly go there voluntarily for extended periods over several years.  Id., at 8.  Second,

the IJ noted an express conflict with *credible* testimony of immigration officials regarding the

circumstances of his felony conviction.  Id., at 9-10.  Third, the IJ found that the Petitioner's

---

[10]C.f., Eugene v. INS, 2003 WL 40509, *2-3 (D. Mass. 2003) (observing that criminal aliens were deprived of any review of factual determinations with regard to CAT claims because of the provision denying aggravated felons the right to appeal to the circuit courts and noting that the due process clause may require that findings of the BIA be supported by "some evidence").

testimony was deliberately vague and non-responsive.  As a consequence the IJ found that Petitioner's "testimony is not clear and is not consistent and does not set forth a credible set of circumstances to show what happened in Haiti."  Exhibit 1, p. 11.[11]

With regard to the factual findings challenged before this Court, the IJ deemed it incredible that Petitioner had almost total recall as to favorable matters (he was particularly detailed about the abuse by officials) but could not provide details as to the dates and times of arrests.  Exhibit 1, p. 7.  The evidence of record does not compel a contrary finding.  Ali, 401 F.3d at 15.  Moreover, while Petitioner contends that documents to support his Petition were unavailable because "all the members of his entire family were already living in the United States,"[12] the evidence adequately supported the IJ's contrary conclusion.  Petitioner's testimony was that his mother and aunt remained in Haiti and Petitioner offered no credible explanation why they could not have provided some supporting documentation.  Exhibit 1, p. 10-11.  It certainly cannot be found that Petitioner's testimony, otherwise incredible, compels a finding that the documents were unavailable.  Ali, 401 F.3d at 15.

---

[11]Even on direct review to the court of appeals, the IJ need not address every aspect of the Petitioner's testimony.  "Where, as here, the Board has given reasoned consideration to the petition, and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented." Morales v. INS, 208 F.3d 323, 328 (1st Cir. 2000).

[12]Petitioner's counsel argues such.  Memorandum, p. 2.  Contrast, Petitioner's Affidavit in Support of the Petition, ¶3 ("*most* members of my family were immigrated to the United States.") (emphasis added).

More importantly, the IJ did not, as Petitioner contends, require that the Petitioner provide documentary evidence to support his *credible* testimony.[13]  See Memo., p. 3-4.  The IJ found the Petitioner's testimony *"vague, unresponsive and lacking in details,"* and stated that *"if available,"* documentary evidence should have been produced to support it.  Exhibit 1, p. 10. The IJ went on to find that the Petitioner could have obtained documents from Haiti through his mother or aunt and had not explained why such documents were not forthcoming.  Exhibit 1, p. 10-11.  The Petitioner cites to no authority for the proposition that *available* documentary evidence need not be produced to buttress or salvage otherwise *incredible* testimony.

---

[13]Certainly, applicable regulations state that, in appropriate circumstances, an applicant's testimony, "if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.13(a).  The IJ noted such.  Exhibit 1, p. 4. The BIA additionally requires that credible testimony be supported by corroborating documentary evidence when such is reasonably available.  Although not noted by the Petitioner, the Ninth Circuit has rejected the BIA "corroboration rule."  See Ladha v. INS, 215 F.3d 889, 901 (9th Cir. 2000) (holding that "an alien's testimony, if unrefuted and credible, direct, and specific, is sufficient to establish the facts testified without the need for any corroboration").  The Second, Third, Sixth and Eighth Circuits, however, have concluded that it is reasonable to require that corroborating evidence available to the an alien be produced.  See Dorosh v. Ashcroft, 398 F.3d 379 (6th Cir. 2004); El-Sheikh v. Ashcroft, 388 F.3d 643 (8th Cir. 2004);  Kayembe v. Ashcroft, 334 F.3d 231, 238 (3rd Cir. 2003); and Guan Shan Liao v. U.S. Dep't. of Justice, 293 F.3d 61, 71 (2nd Cir. 2002).   The Seventh Circuit allows the use of the "corroboration rule" with specific findings that the documents are reasonably available.  Gontcharova v. Ashcroft, 384 F.3d 873 (7th Cir. 2004). Resolution, or even consideration, of this circuit conflict is unnecessary as the IJ did not require that the Petitioner "corroborate" his *credible* testimony.

**III.    The Petitioner's Claim That the IJ Applied an Incorrect "Objective" Standard to Claims Arising Under the CAT Is Outside the Scope of This Court's Jurisdiction, Irrelevant, and Unsupported By Any Legal Authority**

The Petitioner further contends that the BIA imposed a "higher burden" than that required by law in assessing Petitioner's withholding claim under the CAT by utilizing an objective "reasonable person" standard rather than considering Petitioner's "subjective condition."  Memo., p. 4.

As an initial matter, the Petitioner never presented this argument to the BIA.  See Petitioner's Brief to the BIA, attached hereto as Exhibit 3.  Having failed to present the argument to the BIA, Petitioner has clearly failed to exhaust this argument, a jurisdictional prerequisite. See 8 U.S.C. § 1252(d); Sayyah v. Ashcroft, 382 F.3d 20 (1st Cir. 2004); see also, e.g., Foroglou v. Reno, 241 F.3d 111, 114 (1st Cir. 2001) (in an appeal from the denial of habeas review, "there is no reason why Foroglou could not have presented to the Board his request for a good faith exception, together with adequate supporting evidence, and accordingly we decline to consider the argument.") (citing Luis v. INS, 196 F.3d 36, 40 (1st Cir. 1999) (issue not raised to the Board is forfeit)); Bernal-Vallejo v. INS, 195 F.3d 56, 64 (1st Cir. 1999) (in a case involving direct review, the court stated "[r]eview is nonetheless precluded here by another doctrine: exhaustion of administrative remedies. . . .  Usually issues not raised before the BIA may not be raised for the first time on a petition for review.")

The failure to raise the issue before the BIA also constitutes a procedural default of the claim.  Rivera Martinez v. Ashcroft, 389 F.3d 207 (1st Cir. 2004).  As a prudential matter, this Court should not address purported errors that have not been brought to the attention of the

10

agency.  See Foroglou and Bernal-Vallejo, supra.

Even if considered, the claim is irrelevant.  The IJ found that the Petitioner had not

offered credible testimony regarding the events that occurred in Haiti.  If there was no credible

evidence supporting a claim, the standard to be applied as to whether the evidence supports a

claim under the CAT is simply irrelevant.  In the absence of credible evidence, the claim (upon

which Petitioner had the burden of proof) fails under any conceivable standard.

Finally, the claim is non-sensical.  A successful claim under the CAT involves both

"subjective" and "objective" conditions:

> Under the INA, an otherwise deportable alien may avoid removal if the Attorney
> General determines that "the alien's life or freedom would be threatened in [the
> destination] country because of the alien's race, religion, nationality, membership
> in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A).  The
> applicant must carry the devoir of persuasion to show either that (i) he has
> suffered past persecution on account of one of these five protected grounds (thus
> creating a rebuttable presumption that he may suffer future persecution), or (ii) it
> is more likely than not that he will be persecuted on account of a protected ground
> upon his return to his native land.  8 C.F.R. § 208.16(b).  A showing of a
> well-founded fear of future persecution *involves both objective and subjective
> elements*.  To perfect that showing, an alien must establish not only that he
> harbors a subjectively genuine fear of future persecution but also that an
> objectively reasonable basis for that fear exists.

Da Silva v. Ashcroft, 394 F.3d 1, 4 (1st Cir. 2005) (some citations omitted) (emphasis added).

The Petitioner does not explain how the IJ failed to consider "subjective" factors, or why the

Petitioner's failure to provide any credible evidence to support his claim would not render this

issue irrelevant.

**IV.    The Petitioner Is Statutorily Ineligible To Adjust His Status Based
        Upon Marriage**

Petitioner also seeks relief based upon a "pending" application for adjustment of status

based upon his marriage to a United States citizen.  Memo, p. 5.  The Petitioner, however, is

statutorily ineligible to adjust his status.  The Director of Homeland Security may adjust the status of an alien only if "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa *and is admissible to the United States* for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed."  8 U.S.C. §1255 (emphasis added).

The Petitioner is inadmissible as a matter of law.  See 8 U.S.C. § 1182(a)(6)(E)("Any alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is inadmissible").[14]

## V.     The Proper Avenue To Introduce New Evidence Is By Way of a Motion To Reopen To the BIA and Any Decision By the BIA On This Issue Is Unreviewable By This Court

If the Petitioner wishes to introduce new evidence, he may seek to do so by way of a motion to reopen with the BIA.  See 8 C.F.R §1003.2(c).  Petitioner has not.  Thus, he has not exhausted available administrative remedies and habeas jurisdiction is barred.  Sayyah, supra.

In any event, there is simply no basis for habeas relief with regard to "new evidence" because the decision to grant a motion to reopen based upon new evidence is discretionary with the Board, see 8 C.F.R. § 1003.2, and such determinations are unreviewable in habeas.  Saint Fort, 329 F.3d at 203 ( if the statute in question "makes an alien eligible to be considered for a certain form of relief, he may raise on habeas the refusal of the agency to even consider him. But he may not challenge the agency's decision to exercise or not exercise its discretion to grant relief.").  Stated another way, the Petitioner has a right to file the motion to reopen with the BIA

---

[14]The Petitioner is not eligible for waiver of this ground of inadmissibility.  See 8 U.S.C. § 1182h(d)(11) (allowing discretionary waiver if the person "smuggled" was the alien's "spouse, parent, son, or daughter (and no other individual)").

but no right that it be allowed.  This Court simply has no role to play as there is no right to have

such a discretionary decision reviewed in a habeas proceeding.   This is especially true where, as

here, the motion would be untimely.  See 8 C.F.R. §1003.2(c) (imposing a ninety day filing

deadline).[15]

## Conclusion

For the foregoing reasons, the Respondent requests that the Petition be Denied.

Moreover, as the Petition states no appropriate grounds for relief, a stay of removal should also

be denied.  Arevalo v. Ashcroft, 344 F.3d 1 (1st Cir. 2003).

Respectfully submitted,
MICHAEL J. SULLIVAN
United States Attorney
 /s/ Mark J. Grady
MARK J. GRADY
Assistant U.S. Attorney
U.S. Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA   02210
Tel. No. (617) 748-3136

Certificate of Service

I hereby certify that a copy of the foregoing was mailed to counsel for the Petitioner on
April 25, 2005.

 /s/ Mark J. Grady
MARK J. GRADY
Assistant U.S. Attorney

---

[15] The First Circuit has expressly upheld the time limitation at issue for motions to
reopen in claims filed under the CAT.  See Foroglou v. Reno, 241 F.3d 111, 113 (1st Cir. 2001).

13

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
Buffalo, New York

File No.:  A 43 680 899                    January 30, 2002

In the Matter of            )
                            )
JEROME ANTOINE              )   .  IN REMOVAL PROCEEDINGS
                            )
            Respondent      )

CHARGE:        Section 212(a)(6)(E)(i) of the Immigration and
               Nationality Act (the Act) - assisting another
               alien to enter or try to enter the United States
               in violation of law.

APPLICATIONS:  Relief under Section 208 of the Immigration and
               Nationality Act - asylum;

               Relief under Section 241(b)(3)(A) of the Act -
               withholding of removal;

               Relief under the "Torture Convention"; and

               Cancellation of removal under Section 240A(a) of
               the Act.

ON BEHALF OF RESPONDENT:          ON BEHALF OF SERVICE:

Bonnie Coogan Mazur, Esquire      Mark P. Murphy, Esquire
Edelman and Marzokowsky, Esquire  Assistant District Counsel
69 Delaware Avenue, Suite 800
Buffalo, NY 14202

### ORAL DECISION OF THE IMMIGRATION JUDGE

The respondent is a 48-year-old, single male, a native and

citizen of Haiti.  He is charged with being inadmissible from the

United States as an arriving alien, as set forth above, pursuant

to a Notice to Appear dated September 25, 2000 (Exhibit Number

1).

Although the respondent initially denied removability as

1

charged by the Government, subsequently, through his attorney, the respondent admitted all four allegations of fact contained in the Notice to Appear as to the respondent's removability as charged by the Government.

Notwithstanding the respondent's admissions, through counsel, the Service submitted an evidence packet into evidence without objection as Group Exhibit Number 2 in these proceedings.

After having been fully advised as to the consequences of knowingly filing a frivolous application for asylum, <u>see</u> Exhibit Number 3, the respondent submitted an asylum application in these proceedings which is marked as Exhibit Number 4 in these proceedings.

In addition to the asylum application, subsequent documentation are:  Exhibit 5 which includes the 1999 State Department <u>Country Report</u> on Haiti, Group Exhibit Number 6 is background materials on Haiti submitted by the respondent, Exhibit Number 7 are naturalization materials relating to the respondent's brothers, and Exhibit Number 8 is a State Department <u>Profile</u> of Haiti dated March 31, 1998.

The Service also introduced into evidence, without objection, Exhibit Number 9 which contains the respondent's immigrant visa and a Form I-130 submitted on behalf of the respondent, Exhibit Number 10 consisted of a Form I-214 completed at Champlain, New York, and Exhibit Number 11 which is a memo from Immigration Inspector Caines.

Although the respondent had indicated that he was seeking relief in the form of cancellation of removal, it should be noted that the respondent is statutorily ineligible for that form of relief.  Not only was the respondent charged with removability as an alien smuggler, he was convicted of bringing an illegal alien into the United States in the United States District Court, the Northern District of New York, on September 29, 2000.  The conviction is under 8 U.S. Code, Section 1324(a)(2)(A) of the Act.  A copy thereof is part of Exhibit Number 2.  The conviction of the respondent, for relief purposes, would be an aggravated felon, as defined in Section 101(a)(43)(F) of the Act.  Therefore, the respondent would be statutorily ineligible for cancellation of removal under Section 240A(a)(3) of the Act since he has been convicted of an aggravated felony.

The respondent would also be statutorily ineligible for asylum under Section 208 of the Act because he has been convicted of an aggravated felony.  That section defines all aggravated felonies as particularly serious crimes, making the respondent a danger to the community in the United States and therefore ineligible for asylum.

It would appear, however, that the respondent is statutorily eligible to apply for withholding of removal and relief from return to Haiti under the Torture Convention.

To establish eligibility for withholding of removal pursuant to Section 241(b)(3)(A) of the Act, the alien must demonstrate a

A 43 680 899                    3              January 30, 2002

clear probability of persecution in the country designated for deportation on account of race, religion, nationality, membership in a particular social group, or a political opinion. <u>INS v. Stevic</u>, 467 U.S. 407 (1984). This means that the alien must establish that it is more likely than not that he would be subject to persecution for one of the grounds specified in the Act.

With regard to the burden of proof, the BIA has held that where an alien's testimony is the only evidence available, it can suffice where the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis of the alien's alleged fear. <u>Matter of Dass</u>, 20 I&N Dec. 120, 124 (BIA 1989).

The introduction of evidence is not merely an option with the asylum applicant; rather, corroborating evidence should be presented where available. <u>See</u> <u>Matter of Dass</u>, <u>supra</u>. Where the applicant's claim relates primarily on personal circumstances not reasonably subject to verification, corroborative evidence of the asylum applicant's particular experience is not required. However, where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided or an explanation should be given as to why such information was not presented. The absence of such corroboration can lead to a finding that an applicant has failed to meet his burden of proof.

See Matter of Dass, supra.

For asylum applications filed on or after April 1, 1997, an applicant shall also be considered for eligibility for withholding of removal under the United Nations Convention against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment (Torture Convention), if the applicant requests such consideration or if the evidence presented by the alien indicates that the alien may be tortured in the country of/ removal. See 8 C.F.R. Section 208.13(c)(1).

"Torture" is defined as "any act where severe pain or suffering, whether physical or mental, is intentionally inflicted on a person." See 8 C.F.R. Section 208.18(a)(1). The severe pain or suffering must be inflicted on the applicant or a third person for one of four purposes, specifically: "(1) for...obtaining...information or a confession; (2) for punishing...for an act...committed or...suspected of having committed; (3) for intimidation or coercion; or (4) for any reason based on discrimination of any kind." In addition, in order to constitute "torture," the "act" must be directed against a person in the offender's custody or physical control. See 8 C.F.R. Section 208.18(a)(6).

The applicant for withholding of removal under the Torture Convention bears the burden of proving that it is "more likely than not" that he or she would be tortured if removed to the proposed country of removal. See 8 C.F.R. Section 208.16(c)(2).

As with asylum, this burden can be established by testimony without corroboration if the testimony is credible.  <u>Id.</u> <u>Matter of Y-B-</u>, Int. Dec. 3337 (BIA 1998).  In assessing whether the applicant has satisfied the burden of proof, the Court must consider all evidence relevant to the possibility of future torturing, including:

- evidence of past torture inflicted upon the applicant;
- evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
- evidence of gross, flagrant, or mass violations of human rights within the country of removal; or
- other relevant information of conditions in the country of removal.

As set forth above, the respondent's asylum application in this matter is Exhibit Number 4 in these proceedings.  The respondent testified on behalf of his asylum application and there was no testimony from anyone else on the respondent's behalf.

Basically, the respondent sets forth in his asylum application that he has been persecuted in the past and would be persecuted in the future because of his journalism in the past. As set forth in part C of the respondent's asylum application, he was writing articles that were being published with his pseudonym.  He indicates that in 1991, he was arrested and spent

seven months in prison, during which time he was severely beaten by a wooden baton.

The respondent then goes on to speak about a trip to Haiti on May 23, 2000 in which he was threatened by a person who clearly had a gun. The respondent, in fear of his life, left Haiti shortly thereafter.

These proceedings involved testimony on the respondent's asylum, withholding, and CAT claims over a substantial period of time. Initially, the proceedings were held with the respondent as a detained alien. Subsequently, however, he was paroled into the United States by the Immigration Service, and his last several hearings were conducted after the respondent had been released from custody.

The respondent in his testimony testified to three or four arrests and detentions while he was in Haiti. The respondent was able to get very substantial and detailed as to the beatings which were inflicted upon him while he was detained in Haiti. He was not, however, able to pinpoint the dates of the arrests or even which government was in power in Haiti during the period of time when the arrests occurred.

The respondent testified that he had submitted several articles that had been published under one or more pseudonyms. Although he indicated that at least one of these was a very well publicized article and that he had copies of it at his home of these articles have been submitted to this Court.

A 43 680 899                    7                    January

The respondent's testimony in connection with his activities as a journalist, the materials that he published, and his arrests and detentions were very vague. The respondent often was not responsive to the questions that were asked to him. As noted previously, the respondent was unable to identify the exact periods of incarceration or even what government was in power during the periods of incarceration.

It is interesting to note that the respondent only indicates on his asylum application one detention for approximately seven months. The respondent, however, testified to three or four detentions. When asked to explain the absence of the other detentions from his asylum application, he says, "Ask my lawyer. I told her."

The respondent also shows on his asylum application only one return to Haiti in the year 2000. During the respondent's testimony, however, the respondent indicated that although he became a permanent resident of the United States in 1993, he spent substantial periods of time in Haiti, maybe five or six months at a time until the year 1997 when he finally came to the United States. This is interesting to me because it was not contained on his asylum application. It is also interesting because it would lead the Court to wonder why the respondent would continue to go back and forth to Haiti over these four years after he had been subjected to substantial detentions and beatings while in Haiti prior to getting his visa.

A 43 680 899                    8                    January 30, 2002

Although the respondent testified to stays in a hospital and having dealt with doctors and living in his mother's house after he was arrested, there has been no documentation submitted from any doctors, hospitals, or even any letters or other information from the respondent's mother or other relatives of the respondent in Haiti or from the respondent's brothers, sisters, or father who now reside in the United States nor have any of these people come to testify on behalf of the respondent.

Almost all aspects of the respondent's testimony are somewhat vague and unresponsive and not clear. The respondent also, to a large degree in connection with his arrest and detention at the Canadian border, seemed to indicate that he had difficulty because no one was able to communicate with him. He basically testified that the interpreter that they used was French and he did understand French. The Service then produced a witness, one Christine Racine. Ms. Racine testified that she was a Senior Immigration Inspector at Champlain, New York. She further testified, however, that she had been used specifically to act as an interpreter for the respondent in the French language.

Ms. Racine stated that her parents were French Canadians and that French was her native language. She also testified that she had a college degree in French. This Court would note that Ms. Racine has testified before the Court on many occasions previously in connection with the French language, the skills

that she used in Champlain and those skills were never called into question previously.  The Court would also note that the respondent's attorney basically did not challenge Ms. Racine's credibilities in any respect.

Although the respondent testified that he was not shown forms or explained forms when he was detained at Champlain, Ms. Racine testified to having gone over the forms with the respondent word by word.  It would also be noted that the respondent later testified on cross-examination that he was very fluent in the French language and that this along with Creole were his native languages.

The Government introduced into evidence as part of Exhibit Number 9 the immigrant visa on which the respondent came to the United States.  That visa has that the respondent was a lawyer and did not mention that he was a journalist.  The respondent had no response for this, except to say that he did not read the questions, he just signed the application.

I find that the respondent's asylum application and his testimony are not consistent in many degrees.  I find that the respondent's testimony was vague and often unresponsive and lacked details.  Because of this, I believe that under <u>Matter of Dass</u>, <u>supra</u>, it was incumbent on the respondent to produce documentary evidence if such documentary evidence were available. Since the respondent testified that at least one of his articles was very well published and that he had it at home, it would

appear that the respondent would have been in a position to submit this article.  He did not.  Also, the respondent stayed at his mother's house and on one occasions went to his aunt's house to avoid conflict.  There is no documentation from his mother or his aunt, nor, as set forth above, is there any hospital or doctor records.

Since the respondent's testimony is not clear and is not consistent and does not set forth a credible set of circumstances to show what happened in Haiti, I find that the respondent has failed to meet his burden of proof to show either withholding of removal or torture if he would return to Haiti.  The events relied upon by the respondent occurred during a period of time when several different governments were in power in Haiti.  These governments included both military dictatorships and popularly elected governments.  It is not clear exactly what the respondent's politics are, what his articles related to, or who they may have offended.

I find that the respondent has failed to meet his burden of proof that it is "more likely than not" that he would be persecuted if he would return to Haiti in the future.  I also find that the respondent has failed to show that it is "more likely than not" that he would be tortured by the present government of Haiti if he would return to that country.

Based upon the foregoing, the following orders of the Court shall enter:

A 43 680 899                    11              January 30, 2002

<u>ORDER</u>

The respondent's request for relief under cancellation of removal pursuant to Section 240A(a) of the Act is hereby pretermitted and denied;

<u>FURTHER ORDER</u>

The respondent's request for asylum in the United States is hereby denied on statutory grounds;

<u>FURTHER ORDER</u>

The respondent's request for withholding of removal under Section 237(a)(3) of the Act is hereby denied.

<u>FURTHER ORDER</u>

The respondent's applications for relief under the Torture Convention are hereby denied.

<u>FURTHER ORDER</u>

The respondent is hereby ordered removed from the United States to Haiti on the charged ground of removability.

_____
JOHN B. REID
Immigration Judge


A 43 680 899                    12                    January 30, 2002

## CERTIFICATE PAGE

I hereby certify that the attached proceeding before JUDGE JOHN B. REID, in the matter of:

JEROME ANTOINE

A 43 680 899

Buffalo, New York

is an accurate, verbatim transcript of the cassette tapes as provided by the Executive Office for Immigration Review and that this is the original transcript thereof for the file of the Executive Office for Immigration Review.

_____
Rosemary E. Harris, Transcriber

Free State Reporting, Inc.
1324 Cape St. Claire Road
Annapolis, Maryland 21401
(301) 261-1902

May 18, 2002
(Completion Date)

By submission of this CERTIFICATE PAGE, the Contractor certifies that a Sony BEC/T-147, 4-channel transcriber or equivalent, as described in Section C, paragraph C.3.3.2 of the contract, was used to transcribe the Record of Proceeding shown in the above paragraph.

**U.S. Department of Justice**
Executive Office for Immigration Review

**Decision of the Board of Immigration Appeals**

Falls Church, Virginia 22041

File:    A43-680-899 - BUFFALO

Date:                 SEP 25 2003

In re:   ANTOINE, JEROME

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Bonnie Crogan Mazur, Esq.

ON BEHALF OF DHS: Mark Murphy, Assistant District Counsel

ORDER:

PER CURIAM. The Board affirms, without opinion, the results of the decision below. The decision below is, therefore, the final agency determination. *See* 8 C.F.R. § 1003.1(e)(4).

FOR THE BOARD

**U.S. DEPARTMENT OF JUSTICE**
**BOARD OF IMMIGRATION APPEALS**
**FALLS CHURCH, VA**

|  |  |
|---|---|
| In the Matter of | File No:    A43-680-899 |
| ANTOINE, Jerome | |
| Respondent | IN REMOVAL PROCEEDINGS |

## RESPONDENT'S BRIEF IN SUPPORT OF APPEAL

Date:              August 20th, 2002

Submitted by:      Bonnie Crogan Mazur Esq.
                   Addelman & Marszalkowski PC
                   69 Delaware Ave.  Suite 800
                   Buffalo NY 14202

## FACTUAL BACKGROUND

The Respondent is a 48-year-old, single male native and citizen of Haiti. He admitted the allegations of fact contained in the notice to appear as to removability and requested withholding of removal and Convention Against Torture in relief from removal as he was statutorily ineligible for asylum and cancellation of removal due to a September 29th, 2000 criminal conviction in the US District Court, the Northern District of New York under 8 USC §1324 (a)(2)(A) of the INA.

The Respondent initially entered the United States as a Lawful Permanent Resident, and settled with his family in the State of Florida before moving to Massachusetts. During the trial he testified that he had difficulty remembering dates and time periods without the benefit of writing everything down on paper due to a beating on his head that he sustained while in Haiti and in police custody. His testimony in court was frequently interrupted because he suffered such severe headaches that he asked for the proceedings to stop because it was too painful for him to continue talking and answering questions.

The Immigration Judge cited <u>Matter of Dass</u>, 20 I&N Dec. 120, 124 (BIA 1989) in his decision stating that testimonial evidence may suffice where the testimony is believable, consistent and sufficiently detailed to provide a plausible and coherent account of the basis of the alien's alleged fear.

When such evidence is not provided the alien should explain why it was absent.

## ISSUE

**Was the lack of documentary support evidence sufficient? reason to deny the Respondent's request for removal relief during proceedings.**

1

DOCUMENTARY EVIDENCE

The BIA and the courts have accepted the view that evidence of the general political conditions in a country is both valuable and admissible during an asylum hearing. See Melendez v. U.S. Dept. of Justice, 926 F.2d 2111, 21119 (2d Cir. 1991) . The court sees this type of evidence as necessary when it needs to be able to assess whether someone has a well-founded fear. Reports stating general country conditions would be viewed as objective evidence of any violent country conditions that would cause the alien to fear.

Although documentary evidence is not essential to establish a claim , the BIA has held that such corroborating evidence should be produced where it is reasonable to expect it or an explanation should be provided as to why it was not presented. See Matter of S-M-J-, 21 I&N Dec. 722, 725-26 (BIA 1997).

In the present case the Respondent testified as to his family ties, his family's immigration status in the U.S., where he lived and where he worked while in the United States. This information as to his entry and his family status were supported by documentary evidence from both the U.S. INS District Counsel Evidence package as well as documents submitted by the alien's family, namely Naturalization Certificates of family members.

His testimony was sometimes overly detailed and the respondent was repeatedly admonished by the IJ to NOT volunteer more information than the question asked. Reading the transcript of the hearing it is evident that there was great detail and countless descriptive phrases to give a clear over-view of what was happening to the respondent. He was particularly description of the beatings he sustained. (TR 42-63) He explained to the Judge that he could not remember the date of his arrest. It was at this point that he described the head beating as the reason he could not remember. (TR 64:21)

The Immigration Judge expressed concern during the trial that the Respondent was being unresponsive and would not provide specific dates. (TR 65:6-12) The Respondent consistently replied that he could not remember dates unless it was written down and he advised the Judge that he had it written down at home (TR 65: 24-25). When asked again if he could remember the

2

dates he wrote the newspaper articles that caused his arrest and beatings in Haiti, he stated again that he cannot remember (TR 66: 13-16). He was able to describe the place and the surroundings the precipitated his arrests, but he was unable to recall the month day or year the event happened. (TR; pages 67-79) During the several days of the trial, the Respondent suffered many headaches. (TR 113: 198-22).

He further testified that he could not remember things (TR 122: 9-21) The purpose of the testimony was to describe what was happening to the Respondent in Haiti that caused him to fear return to that country. His description of the beating, his description of his activities the could have caused his problems in Haiti were all the evidence that he could provide.
His last trip to Haiti, during which time he only went to get his college transcript records, he stated that he barely escaped an arrest. Since that date he has been unable to return and the documents that would most likely provide objective evidence of his problems in Haiti were items that required him to physically acquire. Something he was no longer willing to do.

## CONCLUSION

In conclusion, the respondent was neither vague and at times he tried to give more information than was required in the questions asked of him, but it was not an attempt to mislead the court, it was the Respondent's style of communication and the way his mind remembered the events of her persecution and beating in Haiti.

As such, the BIA should find that the Respondent was not required to provide evidentiary documentation in support of his testimony, that he did, in fact provide detailed and explicit, sometimes too explicit details of his problems in Haiti. He provided adequate reasons why the documentary evidence was absent and that the Immigration Judge should have found that he sustained his burden

3

of proof in support of his applications from withholding of removal and
Convention Against Torture in relief from removal.

August 20, 2002

Attorney Bonnie Crogan Mazur

4